IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02107-PAB-KLM

JANE DOE # 1,
JANE DOE # 2, and
JANE DOE # 3,

      Plaintiffs,

v.

BOULDER VALLEY SCHOOL DISTRICT NO. RE-2,
TRAVIS JON MASSE,
SUPERINTENDENT CHRIS KING,
PRINCIPAL GINGER RAMSEY,
ASSISTANT PRINCIPAL AND ATHLETIC DIRECTOR MIKE LOWE,
MARK SCHMIDT,
MATT SCHMIDT,
JASON WANEKA, and
JASMINE MASSE,

      Defendants.

---

**ORDER**

---

This matter is before the Court on the Motion to Dismiss [Docket No. 44] filed by defendants Boulder Valley School District No. Re-2 ("School District"), Superintendent Chris King, Principal Ginger Ramsey, Assistant Principal and Athletic Director Mike Lowe, Mark Schmidt, Matt Schmidt, Jason Waneka, and Jasmine Masse. The motion is fully briefed and ripe for disposition.

## I. BACKGROUND

This case arises out of Travis Jon Masse's unlawful sexual conduct with students under the age of eighteen at Broomfield High School ("Broomfield High") located in

Broomfield, Colorado. The plaintiffs are three victims of Mr. Masse. In their amended complaint, plaintiffs assert a claim against the School District for unlawful gender discrimination in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and sexual harassment in violation of the Fourteenth Amendment's Equal Protection Clause. Docket No. 41 at 18-26. Pursuant to 42 U.S.C. § 1983, plaintiffs also assert claims against defendants Superintendent King, Principal Ramsey, Assistant Principal Lowe, Mark Schmidt, Matt Schmidt, Mr. Waneka, and Ms. Masse for violations of the Fourteenth Amendment's Equal Protection Clause.[1] *Id.* Finally, plaintiffs allege claims against the individual defendants for failure to report child abuse in violation of the Colorado Child Protection Action of 1987, Colo. Rev. Stat. § 19-3-301 *et seq.*

Plaintiffs allege the following facts in support of these claims: In 2001, Mr. Masse was a student at the University of Colorado studying to become a licensed teacher. As part of his curriculum, Mr. Masse had to participate in a field placement program wherein he observed classroom instruction. To fulfill this requirement, Mr. Masse performed a field placement at Monarch High School ("Monarch High"), another Boulder Valley School District high school, and was assigned to a classroom taught by Deann Bucher. While enrolled in the field placement program at Monarch High, Mr. Masse

---

[1]Superintendent King was the final policymaker for the Boulder Valley School District. Docket No. 41 at 4, ¶ 10. Principal Ramsey and Assistant Principal Lowe were the two highest ranking school officials at Broomfield High. *Id.* at ¶¶ 11-12. Matt Schmidt was a security guard employed by Broomfield High. *Id.* at 5, ¶ 14. Jasmine Masse was a Broomfield High teacher and was Mr. Masse's wife during the relevant period. *Id.* at ¶ 16. Mark Schmidt and Jason Waneka were assistant wrestling coaches at Broomfield High. *Id.* at ¶¶ 13,15.

also volunteered at Broomfield High as a wrestling coach under the tutelage of Mark Schmidt, who was the head wrestling coach at Broomfield High at the time.

Shortly after Mr. Masse began his field placement at Monarch High, Ms. Bucher expressed concern about Mr. Masse's inappropriate interactions with female students. Specifically, Mr. Masse asked a female student for her telephone number within a few weeks of his placement. After obtaining the number, Mr. Masse placed several "unsolicited and/or unwelcome" calls to her house. Docket No. 41 at 6, ¶ 19. Plaintiffs allege that Mr. Masse's telephone calls made the female student uncomfortable and, as a result, the student requested to be excused from her classes if Mr. Masse was in attendance.

Based on the female student's complaints, Bill Johnson, the principal at Monarch High, terminated Mr. Masse and permanently banned him from the school premises. Plaintiffs allege that Mr. Masse's improper conduct with the female student at Monarch High was noted in the School District's personnel files. Docket No. 41 at 7, ¶ 24. Mr. Johnson also informed Mark Schmidt about the allegations surrounding Mr. Masse. Despite Mr. Johnson's communication, Mark Schmidt allowed Mr. Masse to continue his involvement with the Broomfield High wrestling program.

Once Mr. Masse graduated from the University of Colorado, he was hired by Broomfield High as a part-time teacher and assistant wrestling coach. Eventually, Mr. Masse was promoted to a full-time teacher. Plaintiffs allege that, in his position as a teacher, Mr. Masse made inappropriate sexual comments to his female students and it was "common knowledge" that he attempted to pursue sexual relations with female students at Broomfield High. Docket No. 41 at 9, ¶¶ 30-31.

In addition to the full-time teaching position, Mr. Masse also became the head coach of the Broomfield High wrestling team. Mr. Masse's assistants in the program included Mark Schmidt, the former head coach, and Jason Waneka. As the head coach, Mr. Masse had the right to select team managers to help with the wrestling program. The team managers were students from Broomfield High whose primary duties were to keep score at tournaments, clean the wrestling mats, and take care of the training equipment. Mr. Masse typically selected female managers and brought them to out-of-district and out-of-state wrestling tournaments, which plaintiffs allege was unusual and contrary to the practices of other high school wrestling programs. *Id.* at ¶ 33.

Jane Doe #1 was a student at Broomfield High between 2006 and 2009. Mr. Masse gave Jane Doe #1 a position as a team manager in 2006 and his inappropriate interactions with her began a year later. *Id.* at 10-11, ¶ 39. In late December 2007, Mr. Masse sent Jane Doe #1 several text messages. *Id.* The text messages were related to wrestling topics at first; however, they soon turned to sexual topics. *Id.* at 11, ¶ 40. In the months following December 2007, Mr. Masse continued sending text messages to Jane Doe #1, which reached the point where the pair sent each other text messages on a daily basis. Plaintiffs allege that the interactions between Mr. Masse and Jane Doe #1 raised suspicion among the students at Broomfield High because Mr. Masse was sometimes seen alone in his office with Jane Doe #1. *Id.* at 9, ¶ 32.

Over the course of 2008 and 2009, Mr. Masse taught two classes in which Jane Doe #1 was a student. At some point during the school year, Jane Doe #1 sent Mr.

Masse a nude photograph of herself, *id.* at 12, ¶ 44, and soon thereafter Mr. Masse

began engaging in unlawful sexual contact with Jane Doe #1.  Mr. Masse first had

unlawful sexual contact with Jane Doe #1 in November 2008, *id.* at ¶ 48, and again in

December 2008 when Jane Doe #1 accompanied the wrestling team to a tournament in

Grand Junction, Colorado.  *Id.* at ¶¶ 50-51.

Over the weekend of January 17, 2009, the Broomfield High wrestling team went

to a tournament in Huntington Beach, California.  The team stayed at a hotel in

Huntington Beach.  Several of the wrestlers' parents made the trip for the weekend,

including Superintendent King, whose son was a member of the wrestling team.  Jane

Doe #1, accompanied by her father, also traveled to Huntington Beach with the

wrestling team. Plaintiffs allege that Mr. Masse, Mark Schmidt, Mr. Waneka, and other

coaches conducted themselves "inappropriately" during the tournament in Huntington

Beach by openly drinking alcohol in front of the students.  *Id.* at 13, ¶ 55.

Superintendent King left the tournament early because his son was eliminated.

Before leaving, he gave the key to his hotel room to Mr. Masse.  On the final day of the

tournament, Mr. Masse had sexual contact with Jane Doe #1 both at the tournament

and in Superintendent King's hotel room.  *Id.* at 14, ¶¶ 57-59.  Mr. Masse also engaged

in further unlawful sexual contact with Jane Doe #1 during a wrestling tournament over

the weekend of February 13, 2009.

Jane Doe #2 was a student in Mr. Masse's U.S. History course.  *Id.* at 15,

¶ 65-66.  Mr. Masse sent text messages to Jane Doe #2 that were innocuous at first,

but then slowly turned sexual in nature.  Mr. Masse's text messages made

inappropriate requests of Jane Doe #2 such as demanding "naked pictures" or that she perform lewd acts. *Id*. at 16, ¶¶ 72-73. Mr. Masse did not engage in unlawful sexual contact with Jane Doe #2.

With respect to Jane Doe #3, Mr. Masse obtained her contact information from Jane Doe #2. Jane Doe #3 took a course taught by Mark Schmidt and, according to plaintiffs, Mr. Masse would frequently enter Mr. Schmidt's classroom to hold conversations with Jane Doe #3. Mr. Masse began sending Jane Doe #3 inappropriate and sexually explicit text messages during and after school hours. *Id.* at 17, ¶ 79. This eventually led to Mr. Masse engaging in unlawful sexual contact with Jane Doe #3 on several occasions, with one such incident occurring in the wrestling room at Broomfield High and another in Mr. Masse's truck. *Id*. at 17-18, ¶¶ 82-83.

According to the complaint, Matt Schmidt was aware of Mr. Masse's unlawful sexual conduct with the underage students at Broomfield High. *Id*. at 18, ¶ 84. Plaintiffs allege that, the day after Mr. Masse was arrested for unlawful conduct with a minor, Matt Schmidt confronted Jane Doe #3 and instructed her not to tell anyone about her sexual contact with Mr. Masse. *Id.* at ¶ 85.

Plaintiffs allege that the defendants knew about the incident at Monarch High and Mr. Masse's termination from the field placement program. *Id*. at 7, ¶ 25.

## II. STANDARD OF REVIEW

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v.*

*Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted).  In so doing, the Court "must accept all the well-pleaded allegations of the complaint."  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted).  At the same time, however, a court need not accept conclusory allegations.  *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (omission marks, internal quotation marks, and citation omitted).  The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (quotation marks and citation omitted).

## III.  ANALYSIS

### A.   Title IX Claim Against School District

Plaintiffs' first claim for relief alleges that the School District discriminated against plaintiffs on the basis of gender in violation of Title IX.  Title IX prohibits sex discrimination in educational programs.  20 U.S.C. § 1681(a).  Sexual harassment is a form of discrimination actionable under the Title IX.  *Escue v. N. Okla. College*, 450 F.3d 1146, 1152 (10th Cir. 2006).  Although the statute does not mention a private right of action, the Supreme Court has held that such a right is implied and entitles the successful plaintiff to damages.  *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 76 (1992).

Under Title IX, a school district cannot be held liable on a theory of respondeat superior for an employee's violation of the statute.  *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 285 (1998).  To hold a school district accountable for the actions of its employees, a plaintiff must show that the school district: "(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school."  *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999).

With respect to the first two prongs of this analysis, only if an "appropriate person" has knowledge of the violations will a school district have notice of such violations.  *Id.*  Although the Tenth Circuit has not provided a bright line rule to determine who qualifies as an "appropriate person," it has found that high school

principals generally qualify. *See id.* at 1247 (finding that a principal is an appropriate person because she was the highest-ranking school official); *see also Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 653 (1999) (discussing the principal's actual knowledge of harassment); *Gebser*, 524 U.S. at 291 (assuming without discussion that a high school principal was an appropriate person under the statute); *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1256 (11th Cir. 2010) (finding principal is "appropriate person"). For purposes of this motion, and as so conceded by defendants, Docket No. 44 at 4, the Court will consider Superintendent King, Principal Ramsey, and Assistant Principal Lowe as "appropriate persons" because they are the individuals who "at a minimum ha[d] authority to address the alleged discrimination and to institute corrective measures."[2] *Gebser*, 524 U.S. at 290.

To show that the School District had actual knowledge of Mr. Masse's sexual harassment, plaintiffs must show that Superintendent King, Principal Ramsey, or Assistant Principal Lowe had actual knowledge of Mr. Masse's actions or that Mr. Masse posed a substantial risk of abuse to students based on prior complaints. *Escue*, 450 F.3d at 1154. Plaintiffs do not allege that Superintendent King, Principal Ramsey, Assistant Principal Lowe, or any other "appropriate person" had actual knowledge of Mr. Masse's actions at Broomfield High, so the Court's inquiry will focus on whether Mr. Masse posed a substantial risk of abuse. *Escue*, 450 F.3d at 1154.

---

[2]To the extent plaintiffs assert that Mark Schmidt is an "appropriate person" for Title IX purposes, Docket No. 45 at 8, the Court is not convinced. At the time of Mr. Masse's illegal conduct, Mark Schmidt was an assistant wrestling coach and therefore Mr. Masse's subordinate. There is no plausible allegation that he had any authority to address the alleged discrimination and take corrective action.

Plaintiffs claim that Superintendent King, Principal Ramsey, and Assistant Principal Lowe knew of the Monarch High incident and Mr. Masse's termination. Docket No. 45 at 8. However, this allegation alone is insufficient to alert Superintendent King, Principal Ramsey, and Assistant Principal Lowe that Mr. Masse posed a substantial risk of abuse because it was "too dissimilar, too infrequent, and/or too distant in time" from Mr. Masse's unlawful actions at Broomfield High. *Escue*, 450 F.3d at 1153. The Monarch High accusation is dissimilar to Mr. Masse's sexually harassing conduct at Broomfield High because plaintiffs do not allege that Mr. Masse's phone calls to the female student, while "unsolicited," "unwelcome," and the cause of his termination, were overtly sexual.[3] *See id.* (finding a single incident of inappropriate touching and a series of inappropriate name calling too dissimilar to pervasive sexual conduct). Moreover, this is the only specific allegation that Superintendent King, Principal Ramsey, or Assistant Principal Lowe knew of inappropriate sexual behavior by Mr. Masse.[4] This single complaint is too infrequent to show that Mr. Masse had a propensity to commit sexual harassment. *Id.* at 1154 (finding that two episodes did not provide the school with actual knowledge that a teacher presented a "substantial risk of abuse"). Finally, because the Monarch High incident occurred six years before Mr.

---

[3]Although the amended complaint does not say so explicitly, it is fairly read to allege that Mr. Masse's calls to the student were for an inappropriate romantic purpose.

[4]Plaintiffs allege that Mr. Masse's inappropriate conduct at Broomfield High was "common knowledge" and "well-known" among the students. Docket No. 41 at 9, ¶ 31. Despite being conclusory, these allegations do not assert that an "appropriate person" knew of such conduct. Plaintiffs' complaint states that the students were suspicious; however, the complaint does not allege that these students informed their teachers or reported the information to the principal. As such, it cannot attribute knowledge to Superintendent King, Principal Ramsey, or Assistant Principal Lowe.

Masse's unlawful conduct with Jane Doe #1, it was too distant in time to give adequate notice to Superintendent King, Principal Ramsey, and Assistant Principal Lowe. *Id*. Accordingly, the Court finds that plaintiffs' complaint does not sufficiently allege that Superintendent King, Principal Ramsey, and Assistant Principal Lowe had constructive knowledge that Mr. Masse posed a substantial risk of abuse to students.

Because plaintiffs fail to show that an appropriate person in the School District had actual knowledge of Mr. Masse's sexual harassment, the Court need not consider whether the School District was deliberately indifferent to such information. *See Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1121 (10th Cir. 2008) ("We need not respond to Ms. Rost's argument that the district was deliberately indifferent in its response to the harassment prior to K.C.'s January 2003 disclosure as we have concluded that the district had no knowledge of the harassment until January 2003."). Accordingly, plaintiffs' claim for sexual harassment under Title IX against the School District will be dismissed.

### B.   42 U.S.C. § 1983 Claims

Plaintiffs allege that the defendants violated their equal protection rights under the Fourteenth Amendment to the United States Constitution. The Tenth Circuit has found that sexual harassment by a state actor can constitute a violation of the equal protection clause. *Murrell*, 186 F.3d at 1249 (citing *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989)). Denials of equal protection by a municipal entity or individuals acting under color of state law are actionable under 42 U.S.C. § 1983. Because

plaintiffs assert several claims pursuant to § 1983, the Court will discuss each claim as it relates to the individual defendants.

### 1. *Failure to Report and Investigate against Individual Defendants*

Plaintiffs' third claim for relief alleges that the individual defendants were deliberately indifferent to Mr. Masse's pattern of sexual misconduct.  A government employee may be held liable under § 1983 upon a showing of deliberate indifference to known sexual harassment.  In order to hold defendants personally liable under § 1983, plaintiffs must show that: (1) each defendant received notice of a pattern of violations of plaintiffs' constitutional right to be free from sexual harassment; (2) each defendant displayed deliberate indifference to or tacitly authorized the unconstitutional acts; (3) each defendant failed to take proper remedial steps; and (4) each defendant's failure to take proper remedial steps caused plaintiffs' injury.  *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cnty., Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993).  Moreover, the Tenth Circuit has held that a co-worker may be liable for sexual harassment under the Fourteenth Amendment if the co-worker exercised state authority over the plaintiff. *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1354 (10th Cir. 1996).

### a. Superintendent King, Principal Ramsey, Assistant Principal Lowe

The Court finds that plaintiffs' complaint does not sufficiently allege that Superintendent King, Principal Ramsey, and Assistant Principal Lowe had knowledge of Mr. Masse's unlawful conduct.  There are no allegations in the complaint that anybody reported Mr. Masse's unlawful sexual harassment at Broomfield High to these three defendants.  In addition, as discussed above, the Monarch High incident is insufficient

to establish notice to these defendants.  *See Jojola v. Chavez*, 55 F.3d 488, 491 (10th Cir. 1995) (finding four incidents and other rumors of inappropriate sexual behavior insufficient to state claim that principal had actual knowledge under § 1983 of pattern of violation of female students' constitutional right to be free of sexual abuse). Accordingly, plaintiffs have failed to allege facts to state a § 1983 claim against Superintendent King, Principal Ramsey, and Assistant Principal Lowe.

### b.  Mark Schmidt

With respect to Mark Schmidt, the Court finds that the complaint does not allege sufficient facts to hold Mark Schmidt liable.  Plaintiffs allege that Mark Schmidt was the assistant wrestling coach at Broomfield High.  As noted above, the Monarch High allegation is insufficient to attribute actual knowledge to Mark Schmidt of a pattern of sexual harassment by Mr. Masse.  *Id.*  Plaintiffs' allegation that Mark Schmidt observed "inappropriate conduct" by Mr. Masse, Docket No. 41 at 8, ¶ 29, presumably involving wrestling managers, also fails to establish actual knowledge given plaintiffs' failure to explain what the "inappropriate conduct" involved.  Similarly, plaintiffs' allegations that Mark Schmidt observed Mr. Masse receive text messages says nothing about what, if anything, Mark Schmidt knew regarding the content of the text messages or who they were from.  Docket No. 41 at 11, ¶ 42.  In addition, the fact that Mark Schmidt, Mr. Waneka, and Mr. Masse drank alcohol in front of students at one tournament does not plausibly allege that Mark Schmidt had actual knowledge of a pattern of unlawful sexual conduct by Mr. Masse.  *Id*. at 13, ¶ 55.  Finally, the complaint does not allege that Mr. Masse acted inappropriately when Mr. Masse spoke with Jane Doe #3 in Mark

Schmidt's class or that Mark Schmidt even noticed these conversations. *Id.* at 17, ¶ 80. Thus, plaintiffs have not plausibly alleged that Mark Schmidt had knowledge of a pattern of violations of plaintiffs' constitutional rights by Mr. Masse. Accordingly, the Court will dismiss plaintiffs' § 1983 claim against Mark Schmidt.

### c. Matt Schmidt

Plaintiffs allege that Matt Schmidt is a security guard at Broomfield High and a friend of Mr. Masse. Plaintiffs allege that Matt Schmidt was aware of the unlawful sexual contact between Mr. Masse and Jane Doe #3. Docket No. 41 at 18, ¶ 84. Plaintiffs further assert that, the day after Mr. Masse was arrested, Matt Schmidt instructed Jane Doe #3 not to tell anyone about Mr. Masse's sexual contact with her. *Id.* at ¶ 85. These allegations plausibly show that Matt Schmidt was aware of Mr. Masse's unlawful sexual contact with Jane Doe #3 and had personal involvement in that he told her not to report it.

However, plaintiffs fail to allege sufficient facts that Matt Schmidt was a "supervisor" or "employer" for purposes of establishing "state action," *see Murrell*, 186 F.3d at 1250, or that he exercised "state authority" over plaintiffs. *David*, 101 F.3d at 1354. Plaintiffs do not allege that Matt Schmidt was plaintiffs' supervisor or employer. Moreover, plaintiffs do not allege any facts that can plausibly support a claim that he used his position as a security guard to exercise "state authority" over Jane Doe #3. Instead, based on the allegations of the complaint, it is more plausible that he told Jane Doe #3 not to report the sexual contact with Mr. Masse in the capacity of a friend of Mr. Masse. Thus, the Court will dismiss plaintiffs' § 1983 claim against Matt Schmidt.

### d. Jason Waneka

Plaintiffs allege that Jason Waneka was an assistant wrestling coach at Broomfield High. The complaint alleges that Mr. Waneka, like Matt Schmidt, observed "inappropriate conduct" by Mr. Masse. Docket No. 41 at 8, ¶ 29. As already discussed in regard to Mark Schmidt, this allegation does not establish actual knowledge. In addition, the complaint avers that Mr. Waneka saw Mr. Masse send and receive text messages and drink in front of students at a wrestling tournament. As discussed in regard to Mark Schmidt, these allegations are insufficient. Accordingly, the Court finds that plaintiffs' assertions fail to state a § 1983 claim against Mr. Waneka. *Murrell*, 186 F.3d at 1250.

### e. Jasmine Masse

Plaintiffs allege that Jasmine Masse was a teacher at Broomfield High and the wife of Mr. Masse. Plaintiffs' complaint claims that "Defendant Jasmine Masse also became aware that her husband and fellow teacher, Defendant Masse, was perpetrating sexual harassment and sexual abuse against underage female students." Docket No. 41 at 9, ¶ 34. However, there are no assertions about when or how Ms. Masse found out about Mr. Masse's unlawful conduct. Plaintiffs' allegations in this regard are wholly conclusory, and the Court is not required to accept them as true. *Bryson*, 534 F.3d at 1286 ("a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."). Moreover, plaintiffs make no attempt to suggest otherwise in their response. Accordingly, plaintiffs' § 1983 claim against Ms. Masse is dismissed

because plaintiffs have not nudged the allegations against her from "conceivable to plausible." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

### 2. Failure to Investigate and Report against the School District

Plaintiffs' fourth claim alleges that the School District was deliberately indifferent to Mr. Masse's pattern of sexual misconduct. A school district's liability for sexual harassment under the Equal Protection Clause is analyzed under a municipal liability framework. *Murrell*, 186 F.3d at 1249-50. To maintain a claim for municipal liability, plaintiffs must allege that Mr. Masse's actions were representative of an official policy or custom of the institution, or taken by an official with final policymaking authority. *Id*. at 1249.

Plaintiffs do not claim that the School District had an official policy of allowing employees to sexually harass students or that an official with final policy making authority was responsible for the sexual harassment at issue here. Instead, plaintiffs allege that the School District had a custom of failing to investigate and report sexual harassment in the district. See Docket No. 41 at 21-22. To hold the School District liable, plaintiffs must allege (1) continuing, widespread, and persistent misconduct by the state; (2) deliberate indifference to or tacit authorization of the conduct by policymaking officials after notice of the conduct; and (3) a resulting injury. *See Gates*, 996 F.2d at 1041. Plaintiffs' allegations do not satisfy this standard.

As previously discussed, Superintendent King and Principal Ramsey had no prior knowledge of Mr. Masse's conduct at Broomfield High. In addition, plaintiffs have

not shown widespread or persistent unlawful conduct by School District employees.

Plaintiffs have only alleged that there were rumors among the student body about Mr.

Masse's relationships with students at Broomfield High.  Docket No. 41 at 9, ¶ 31.

Plaintiffs have not alleged that other school district employees were also having

unlawful relationships with students.  As such, plaintiffs' allegations do not show "that

the underlying unconstitutional misconduct was so widespread or flagrant that in the

proper exercise of its official responsibilities [School District officials] should have

known of it."  *Thelma D. ex rel. Delores A. v. Bd. of Educ.*, 934 F.2d 929, 933 (8th Cir.

1991).  Plaintiffs' assertions are insufficient to raise a claim against the School District

for failure to investigate and report.  Therefore, plaintiffs' § 1983 claim for failure to

report and investigate against the School District will be dismissed.

### 3.  Failure to Supervise and Train against Individual Defendants

In their fifth claim, plaintiffs contend that Superintendent King, Principal Ramsey,

Assistant Principal Lowe, and Mark Schmidt are individually liable under § 1983 for

violating plaintiffs' Fourteenth Amendment right to be free from sexual harassment.

Specifically, plaintiffs allege that the supervisor defendants[5] failed to train their

employees or implement policies with respect to the use of electronic technologies

which they knew or should have known were likely to lead to sexual harassment by a

teacher.  Docket No. 41 at 22-23.

Supervisors are only liable under § 1983 for the constitutional violations that they

cause.  *Dodds v. Richardson*, 614 F.3d 1185, 1213 (10th Cir. 2010).  A supervisor may

---

[5]Although plaintiffs include Mark Schmidt as a defendant in this claim, plaintiffs provide no facts alleging that Mark Schmidt was a supervisor.

be held liable for directly ordering a subordinate to violate a plaintiff's rights, by having actual knowledge of past constitutional violations carried out by a subordinate, or by showing deliberate indifference. *See id.* at 1212. Regardless of what theory is asserted for supervisory liability, a supervisor "is only liable for his or her own misconduct." *Id.* (quoting *Iqbal*, 556 U.S. at 677).

Plaintiffs do not allege that Superintendent King, Principal Ramsey, Assistant Principal Lowe, or Mark Schmidt personally participated in the constitutional violations at Broomfield High or that they had knowledge of the violations and acquiesced in their continuance. *See* Docket No. 41 at 22-23. Thus, plaintiffs' claim rests solely on defendants' failure to train school district employees on the proper use of electronic technology. *See id.*

Failure to supervise and failure to train are treated the same in the Tenth Circuit. *Whitewater v. Goss*, 192 F. App'x 794, 797 (10th Cir. 2006). To succeed on their failure to train and/or supervise claim, plaintiffs must demonstrate the supervisor's inaction was the result of deliberate indifference. *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). Deliberate indifference means more than simple or even heightened negligence. It requires "an act or omission purposefully committed by a person who must have realized that the conduct was unnecessarily dangerous or which conduct was done heedlessly or recklessly, without regard to the consequences, or without regard to the rights and safety of others." *Zuchel v. City & Cnty. of Denver*, 997 F.2d 730, 735 (10th Cir. 1993). In addition to meeting the deliberate indifference standard, the plaintiff must also make a strong causation showing. There must be a

direct causal link between the challenged action (or inaction) and the specific constitutional deprivation, such that defendants, through their deliberate conduct, are the moving force behind the injury alleged. *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

The Court finds that plaintiffs have not sufficiently alleged that the supervisor defendants failed to train or failed to supervise their subordinates in a way that led to Mr. Masse's unlawful actions. First, there is no allegation that the supervisor defendants were alerted to previous instances within the School District where technology led to sexual harassment. *See Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (widespread abuse that is "obvious, flagrant, rampant and of continued duration" can lead to supervisory liability if the supervisor does not act to correct these behaviors); *cf. Currier v. Doran,* 242 F.3d 905, 923 (10th Cir. 2001) ("Having knowledge that subordinates are depriving young children of their constitutional rights, Gonzales' failure to correct this conduct amounts to a deliberate indifference to the rights" of the victims). Second, plaintiffs make no allegation that there was a pattern of sexual harassment stemming from the use of technology. *Brown*, 520 U.S. at 407-08 ("[T]he existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training . . . is the 'moving force' behind the plaintiff's injury."). Without notice or a pattern of previous actions based on the use of technology, plaintiffs cannot show that the lack of a policy on how to use electronic devices was the driving or moving force that led to plaintiffs' injuries. Accordingly, plaintiffs' claim against the supervisor defendants, including Mark Schmidt, for failure-to-train is dismissed.

### 4.  Failure to Supervise and Train against the School District

In their sixth claim, plaintiffs claim that the School District had an unconstitutional practice or custom of failing to issue clear guidelines concerning the use of electronic technology, failing to enforce existing guidelines, failing to monitor the use of such technology, and failing to train staff to recognize and report indicia of harassment and discriminatory conduct.  Docket No. 41 at 24, ¶¶ 121-22.  Hence, plaintiffs assert the same failure-to-train claim against the School District as they do against the individual defendants in their fifth claim.

Under § 1983, municipal liability is narrow.  See *Brown*, 520 U.S. at 405. Municipalities may not be held liable under a theory of respondeat superior.  *See City of Okla. City v. Tuttle*, 471 U.S. 808, 818 (1985).  Rather, in order for a municipality to be held liable under § 1983, plaintiffs must prove that a municipal policy or custom caused the plaintiffs' alleged deprivation.  *See Brown*, 520 U.S. at 405.  Furthermore, a plaintiff who seeks to establish municipal liability "on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."  *Id.* at 407.

The Court in *Brown* noted that an inadequate training program could be the basis for § 1983 liability, but only in "limited circumstances."  *Id*.  In order for liability to attach for failure to train, a pattern of constitutional violations arising directly from the failure to train must exist.  Thus, "[i]f a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new

program is called for." *Id*. Furthermore, "the existence of a pattern of tortious conduct . . . may tend to show that the lack of proper training . . . is the 'moving force' behind the plaintiff's injury." *Id.* at 407-08.

Consonant with *Brown*, the Tenth Circuit has created a three-part test that a plaintiff must prove in order to hold a municipality liable in a § 1983 suit: (1) the existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the school district's employees; (2) deliberate indifference to or tacit approval of such misconduct by a school district's policymaking officials after notice to the officials of that particular conduct; and (3) that the plaintiffs were injured by virtue of the unconstitutional acts pursuant to the district's custom and that custom was the moving force behind the unconstitutional acts. *Gates*, 996 F.2d at 1041.

The Court finds that plaintiffs' allegations are insufficient to raise a § 1983 claim against the School District. Plaintiffs have not shown the existence of continuing, persistent, and widespread sexual harassment by the School District's employees that had become so permanent and well settled as to have the force and effect of law. Plaintiffs have only identified the misconduct of one employee, Mr. Masse, which is not sufficient to show a custom. *Cf. Tuttle*, 471 U.S. at 823-24, ("[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by existing, unconstitutional municipal policy"); *Murrell*, 186 F.3d at 1250 (noting that acts of a single individual who does not have final decision making authority do not demonstrate a custom or policy of the School District to be deliberately indifferent to sexual harassment as a general matter).

Second, plaintiffs have failed to show tacit approval of such misconduct by appropriate persons within the School District. There is no allegation that the School District had a pattern of acquiescing to sexual harassment or that it regularly tacitly authorized unlawful sexual harassment. The fact that Mr. Masse, Mark Schmidt, and Mr. Waneka drank alcohol in front of students is insufficient to raise a claim for deliberate indifference to sexual harassment. Consequently, because plaintiffs fail to sufficiently allege that the School District was aware of Mr. Masse's illegal conduct, plaintiffs cannot hold the School District liable under § 1983. Accordingly, plaintiffs' failure-to-train claim against the School District will be dismissed. *Gates*, 996 F.2d at 1041.

### C.   Colorado Failure to Report Abuse Claim

In their seventh claim, plaintiffs allege that the individual defendants violated Colo. Rev. Stat. § 19-3-301 by failing to report child abuse of which they were aware. The Colorado Child Protection Act of 1987, Colo. Rev. Stat. § 19-3-301 *et seq*., requires the mandatory reporting of all known or suspected child abuse or neglect. *M.G. v. Colo. Dep't of Human Servs*., 12 P.3d 815, 817 (Colo. App. 2000). Defendants argue that they are immune from liability under the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § 24-10-101 *et seq*., because their actions were not willful or wanton. Docket No. 44 at 13-14.

The CGIA governs circumstances under which a person may maintain a tort action against the State of Colorado, its political subdivisions, instrumentalities, and employees. *See Mesa Cnty. Valley Sch. Dist. No. 51 v. Kelsey*, 8 P.3d 1200, 1203

(Colo. 2000).  The CGIA provides that public entities are immune from all claims that lie or could lie in tort, unless the claim falls within one of the eight limited areas for which immunity has been waived.  *See* Colo. Rev. Stat. § 24-10-105.

Under the CGIA, a public employee is immune from liability on tort claims arising out of an act or omission of the employee during the performance of his or her duties and within the scope of his or her employment.  Colo. Rev. Stat.  § 24-10-118.  However, public employees are not immune from tort claims if their acts or omissions causing the injury were willful and wanton.  Colo. Rev. Stat. § 24-10-118(2).  The CGIA defines "public employee" to include employees of public entities.  The Court finds that the defendants in this case are public employees within the meaning of the CGIA.  *See* Colo. Rev. Stat. § 24-10-103(4).

Although the CGIA does not define the term "willful and wanton," the majority of Colorado courts addressing the issue have applied the following definition contained in Colorado's exemplary damages statute: willful and wanton conduct is "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or the rights and safety of others, particularly the plaintiff."  Colo. Rev. Stat. § 13-21-102(1)(b); *Carothers v. Archuleta Cnty. Sheriff*, 159 P.3d 647, 650 (Colo. App. 2006); *Zerr v. Johnson*, 894 F. Supp. 372, 376 (D. Colo. 1995); *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1141 (D. Colo. 2001).  Accordingly, the Court will apply these principles to the facts of this case. *Cf. Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994) (applying Colo. Rev. Stat. § 13-

21-102(1)(b) to a claim of willful and wanton conduct in violation of the Fourth Amendment by police officers).

The complaint adequately alleges that Matt Schmidt had actual knowledge of Mr. Masse's sexual contact with Jane Doe #3 and that he instructed her not to report such conduct. The Court finds that plaintiffs' allegations against Matt Schmidt have overcome the CGIA's immunity to suit because his act of advising her not to report sexual contact with Mr. Masse was willful and wanton. However, because plaintiffs do not sufficiently allege that the other defendants had actual knowledge of Mr. Masse's unlawful actions, plaintiffs' seventh claim against the other individual defendants will be dismissed for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Motion to Dismiss Amended Complaint [Docket No. 44] is **GRANTED** in part and **DENIED** in part as indicated in this Order. It is further

**ORDERED** that Claims One, Three, Four, Five, and Six are dismissed. It is further

**ORDERED** that Claim Seven will be dismissed as to all defendants other than defendant Matt Schmidt. It is further

**ORDERED** that defendants Boulder Valley School District No. Re-2, Superintendent Chris King, Principal Ginger Ramsey, Assistant Principal Mike Lowe, Mark Schmidt, Jason Waneka, and Jasmine Masse are dismissed from this case.

DATED September 25, 2012.

BY THE COURT:

＿s/Philip A. Brimmer＿＿＿＿＿＿＿＿＿＿
PHILIP A. BRIMMER
United States District Judge